NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 14-8001

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE: DISTRICT OF COLUMBIA,
PETITIONER.

ON PETITION FOR PERMISSION TO APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**BRIEF FOR PETITIONER DISTRICT OF COLUMBIA**

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 727-6287
loren.alikhan@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici.*—Plaintiffs named below in the third amended complaint are Jacqualyn Thorpe, Donald Dupree, Roy Foreman, Larry McDonald, Curtis Wilkerson, Lavondia Carter, Robert Collins, Winifred Goines, Joseph Gray, Carl Magby, and Denise Rivers.  During the pendency of this action, plaintiffs filed a Suggestion of Death as to plaintiff Lavondia Carter and voluntarily dismissed the claims of Carl Magby and Winifred Goines due to their deaths.  Record Document ("RD") 105, 121, 130.

The district court certified the following class:

All persons with physical disabilities who, now or during the pendency of this lawsuit:

(1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days;

(2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and

(3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

JA 1256.

Defendant below and petitioner here is the District of Columbia.

i

There are currently no amici, but the United States Department of Justice, Civil Rights Division, filed a Statement of Interest with respect to the class certification motion.  JA 1078-98.

B. *Rulings under review*.—The rulings of the district court (Huvelle, J.) at issue are the order and opinion of March 29, 2014, JA 1200-55; JA 1256-57, which are not reported at this time, although the opinion is available at 2014 WL 1273134.

C. *Related cases*.—There are no related cases of which the District is aware.

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES ........................................................................1

STATEMENT OF THE CASE.............................................................................2

     1.    Statutory And Regulatory Background. ...............................................2

     2.    The Supreme Court's *Olmstead* Decision. ..........................................3

     3.    Background On Relevant District Programs.........................................5

          a.    Medicaid-funded home- and community-based services. ..........5

          b.    Assistance available through District agencies to access HCBS. ..................................................................................6

     4.    Procedural Background. .......................................................................8

          a.    Proceedings leading to plaintiffs' renewed motion for class certification.........................................................................8

          b.    The district court's decision to grant class certification. ..........10

STANDARD OF REVIEW ...............................................................................13

SUMMARY OF ARGUMENT.........................................................................14

ARGUMENT ...................................................................................................16

     I.    The Court Should Grant Interlocutory Review Under Rule 23(f). ...................................................................................................16

     II.    On The Merits, The Court Should Vacate The Class Certification Ruling..........................................................................18

          A.    The district court's decision violates this Court's decision in *D.L.* and the Supreme Court's decision in *Wal-Mart*...........18

              1.    Rule 23(a)(2)................................................................20

2.    Rule 23(a)(3)........................................................................29

3.    Rule 23(b)(2). ....................................................................31

CONCLUSION ...............................................................................................35

# TABLE OF AUTHORITIES*

## *Cases*

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013) ...........................16

*Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698 (5th Cir. 2012) ..............16

*Connors v. Incoal, Inc.*, 995 F.2d 245 (D.C. Cir. 1993)...........................................27

*\*D.L. v. District of Columbia*,
    713 F.3d 120 (D.C. Cir. 2013)....... 2, 14, 15, 19, 20, 21, 24, 25, 26, 29, 31, 32, 33

*Day v. District of Columbia*, 894 F. Supp. 2d 1 (D.D.C. 2012).................................9

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) .........................................30

*Dixon v. Gray*, No. 74-CV-0285 (D.D.C.).................................................................10

*In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*,
    708 F.3d 704 (6th Cir. 2013).................................................................................16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013)........................................................................ 1, 16

*\*In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98
    (D.C. Cir. 2002)................................................................................................ 13, 16

*\*Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012) ............. 25, 31, 34

*Kartman v. State Farm Mut. Auto. Ins.*, 634 F.3d 883 (7th Cir. 2011) ....................31

*Kellmer v. Raines*, 674 F.3d 848 (D.C. Cir. 2012) ...................................................14

*Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*,
    293 F.R.D. 254 (D.N.H. 2013).............................................................. 22, 23, 24

---

\*     Authorities upon which we chiefly rely are marked with asterisks.

*Koon v. United States*, 518 U.S. 81 (1996) ..................................................................14

*Lane v. Kitzhaber*, 283 F.R.D. 587 (D. Ore. 2012) ........................................... 22, 24

*Lee v. Dudek*, No. 08-CV-26 (N.D. Fla. Jan. 3, 2012)...............................................17

*Love v. Johanns*, 439 F.3d 723 (D.C. Cir. 2006)......................................................26

*M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012) ...................................................... 16, 29

*New Hampshire v. Amanda D.*, No. 13-CV-8038 (1st Cir.)......................................23

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) ...............................................4

*Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014)..............................................16

*Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) .......................................18

*Randleman v. Fid. Nat'l Trust Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) .....................22

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006)............................13

*Scott v. Family Dollars Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013)..........................16

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .......................... 26, 29

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987) ....................................................13

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
   725 F.3d 1213 (10th Cir. 2013).........................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............ 2, 12, 13, 15, 18, 21, 22, 24, 25, 26, 27, 29, 31, 34

## *Statutes and Regulations*

28 U.S.C. § 1331 ..............................................................................................1

28 U.S.C. § 1343 ..............................................................................................1

28 U.S.C. § 1292(e) ..........................................................................................1

28 U.S.C. § 2201 ..............................................................................................1

28 U.S.C. § 2202 ..............................................................................................1

29 U.S.C. § 794(a) ............................................................................................3

42 U.S.C. § 1396a(a)(10)(A) ...........................................................................5

42 U.S.C. § 1396d(a)(4).....................................................................................5

42 U.S.C. § 1983 ..............................................................................................1

42 U.S.C. § 12132 ............................................................................................3

28 C.F.R. § 35.130(b)(7) ...............................................................................3, 4

28 C.F.R. § 35.130(d)........................................................................................3

28 C.F.R. pt. 35, App. B ...................................................................................3

28 C.F.R. § 41.51(d)..........................................................................................3

28 C.F.R. § 41.53 ..............................................................................................3

28 C.F.R. § 42.511(c) ........................................................................................3

42 C.F.R. § 441.303(f)(6)..................................................................................6

29 D.C.M.R. § 5015.2........................................................................................5

29 D.C.M.R. § 5109.2........................................................................................5

*Rules*

Fed. R. Civ. P. 23(a)(2).......................................................... 2, 14, 15, 18, 20, 21, 34

Fed. R. Civ. P. 23(a)(3).............................................................. 2, 12, 14, 15, 29, 34

Fed. R. Civ. P. 23(b)(2) .................................... 2, 9, 13, 14, 15, 18, 19, 20, 31, 32, 34

Fed. R. Civ. P. 23(f).................................................................. 1, 2, 13, 14, 16, 17, 35

# GLOSSARY

| | |
|---|---|
| ADRC | Office on Aging's Aging and Disability Rights Center |
| DBH | Department of Behavioral Health |
| DHCF | Department of Health Care Finance |
| EPD Waiver | Medicaid Waiver for the Elderly and Persons with Physical Disabilities |
| FAPE | Free Appropriate Public Education |
| HCBS | Home- and Community-Based Services |
| MFP | Money Follows the Person Program |

**JURISDICTIONAL STATEMENT**

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1343 and sought declaratory and injunctive relief under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983. On March 29, 2014, the district court granted plaintiffs' renewed motion for class certification. JA 1200-55; JA 1256-57.

On April 14, 2014, the District of Columbia timely petitioned this Court for permission to take an interlocutory appeal from the district court's class certification order pursuant to Federal Rule of Civil Procedure ("Rule") 23(f). On June 23, 2014, this Court referred the petition to a merits panel. This Court has discretion to exercise jurisdiction under Rule 23(f) and 28 U.S.C. § 1292(e). *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 250 (D.C. Cir. 2013).

**STATEMENT OF THE ISSUES**

1. Whether this Court should exercise interlocutory jurisdiction under Federal Rule of Civil Procedure Rule 23(f) to correct manifest errors in the district court's ruling, which certified a class action to pursue claims that the District of Columbia failed to implement an effective system of transition assistance for Medicaid recipients residing in nursing homes who wished to live in the community, when the putative class members faced distinct alleged injuries by different District agencies, precluding findings of commonality and typicality

under Rule 23(a)(2) & (3) and injunctive relief under Rule 23(b)(2), as recognized in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and this Court's decision in *D.L. v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013).

2. Whether, on the merits, this Court should vacate the erroneously certified class because of the manifest errors in the district court's commonality, typicality and Rule 23(b)(2) analyses.

## STATEMENT OF THE CASE

This petition for permission to appeal under Rule 23(f) arises from the district court's decision to certify a class of District Medicaid recipients, who reside in nursing facilities but would instead like to receive services in the community, to pursue claims that the multiple District agencies responsible for facilitating the various aspects of transitioning back into the community are not effective enough. The District challenges the commonality and typicality of the class, because the putative members have different claims against different agencies for different alleged shortcomings, as well as the district court's decision to certify the class under Rule 23(b)(2) when the desired injunctive relief is varied and multifaceted and would not apply generally to the class as a whole.

## 1.    Statutory And Regulatory Background.

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded

from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Implementing regulations provide that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d), which is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible," 28 C.F.R. pt. 35, App. B. This "integration mandate," however, is not unqualified. A public entity need make only "reasonable modifications" to avoid unduly segregating the disabled, and is relieved of this duty if "making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Section 504 of the Rehabilitation Act, which applies to programs receiving federal financial assistance, has a similar anti-discrimination provision. 29 U.S.C. § 794(a). Parallel implementing regulations require that recipients "administer programs and activities in the most integrated setting appropriate," but not when a proposed accommodation would impose an "undue hardship" on the recipient of federal funds. 28 C.F.R. §§ 41.51(d), 41.53, 42.511(c).

## 2. The Supreme Court's *Olmstead* Decision.

In 1999, the Supreme Court considered whether the ADA's integration mandate "require[s] placement of persons with mental disabilities in community

3

settings rather than in institutions." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 587 (1999). The Court answered that question with "a qualified yes." *Id.* In particular, placement in the community may be necessary when: (i) the public entity's treatment professionals have determined that it is appropriate; (ii) the affected individual desires placement in a less restrictive setting; and (iii) the community placement can be reasonably accommodated, taking into account the resources available to the public entity and the needs of others with disabilities. *Id.*

The Court recognized that whether a request for community placement constitutes a *reasonable* accommodation, per 28 C.F.R. § 35.130(b)(7), must be made in consideration of the public entity's "need to maintain a range of facilities for the care and treatment of persons with diverse … disabilities, and obligation to administer services with an even hand." *Olmstead*, 527 U.S. at 597. Thus, no violation occurs where the public entity shows that the requested reasonable accommodation "'would fundamentally alter the nature of the service, program, or activity.'" *Id.* at 597 (quoting 28 C.F.R. § 35.130(b)(7)). Nor does a public entity violate the ADA's integration mandate where it has "a comprehensive, effectively working plan for placing qualified persons with … disabilities in less restrictive settings, and a waiting list that move[s] at a reasonable pace not controlled by the [public entity]'s endeavors to keep its institutions fully populated." *Id.* at 605-06.

4

### 3.    Background On Relevant District Programs.

#### a.    Medicaid-funded home- and community-based services.

The District operates a Medicaid program through a combination of local and federal funds.  While the District does not operate nursing homes, federal law obligates it to fund long-term care provided in a nursing home to eligible Medicaid beneficiaries.  *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4).  Among other requirements, a Medicaid beneficiary is eligible to receive reimbursement for care provided by a nursing facility if she meets the appropriate "level of care"—that is, shows a sufficient need for a nursing facility—based on an individualized assessment of her needs.  JA 868.

Two District Medicaid programs are the primary sources of funding for long-term home- and community-based services ("HCBS") for individuals leaving nursing facilities.  First, in addition to the inpatient long-term care an individual might receive in a nursing facility, the District's Medicaid State Plan covers some personal care aide services provided by an unskilled in-home aide and home health services provided by skilled professionals or unskilled health aides.  JA 868-69; 29 D.C.M.R. §§ 5015.2, 5109.2.  An individual may be eligible for such services even if she does not meet the nursing facility "level of care."

Second, the District administers a Medicaid waiver for the Elderly and Persons with Physical Disabilities ("EPD Waiver") through its Department of

Health Care Finance ("DHCF"), which permits greater coverage than what the District's Medicaid State Plan permits. The EPD Waiver is a federally approved component of the District's Medicaid program that funds HCBS for individuals who meet the nursing home "level of care" and certain other financial eligibility criteria. JA 300-07, 332-33, 866-67. The services covered by the EPD Waiver include personal care aide services beyond those available through the Medicaid State Plan, case management, and homemaker services. JA 351. Unlike the District's Medicaid State Plan, federal law mandates that the District limit the number of individuals who may be served by the EPD Waiver. 42 C.F.R. § 441.303(f)(6).

### b.    Assistance available through District agencies to access HCBS.

A person who transitions from a nursing facility to the community with the District's assistance may work with one or more of three District agencies, depending on her particular needs: DHCF, the Office on Aging's Aging and Disability Rights Center ("ADRC"), and/or the Department of Behavioral Health ("DBH") (previously the Department of Mental Health). JA 926-29. Of course, because the District does not operate nursing facilities, many individuals successfully transition to the community with no direct assistance from the District, but can access HCBS on their own, with the help of a friend or relative, or with the assistance of a social worker employed by the nursing facility. Hundreds

have done so since 2010. JA 1107, 1129-30; *see generally* JA 908-15, 1106-22, 1129-34.

In addition, the District operates a program called Money Follows the Person ("MFP") to assist eligible nursing facility residents in transitioning to community-based settings. JA 34. The program is funded through a federal grant and its operation is overseen by the federal Centers for Medicare and Medicaid Services. JA 34. To qualify for MFP, a nursing facility resident must have resided in the nursing facility for at least 90 days and must also meet the financial and clinical eligibility requirements of the EPD Waiver. JA 334. MFP thus is limited to individuals who, at the time of their discharge, continue to meet the nursing facility "level of care." Through MFP, nursing home residents receive individualized assistance with locating housing, enrolling with HCBS providers, planning for discharge, and funding transition services such as housing applications, security deposits, and moving expenses. JA 86. MFP funds an individual's first year living in a community setting; after that, the individual must transfer onto the EPD Waiver to continue receiving services. RD 19-3, at 3. MFP is a collaborative effort between DHCF, ADRC, and DBH and the degree to which each agency is involved, if at all, depends on the individualized needs of the nursing facility resident. JA 928.

7

In April 2013, ADRC hired staff to provide additional assistance beyond that available through MFP.  JA 937-38.  ADRC's staff provides assistance to any nursing facility resident who requests it, regardless of whether they meet the nursing home "level of care" or are even Medicaid beneficiaries.  JA 937-38.

Further, DBH provides assistance for Medicaid beneficiaries who reside in a nursing facility and have a serious and persistent mental illness, often in conjunction with other physical disabilities.  JA 939-41.  The degree to which DBH facilitates an individual's discharge varies depending on the individual's particularized needs and the degree to which her mental health needs predominate over her physical disabilities.  JA 928, 940.

**4.    Procedural Background.**

    **a.    Proceedings leading to plaintiffs' renewed motion for class certification.**

Four named plaintiffs, each of whom is a District Medicaid recipient who resided in a nursing facility, filed suit in 2010 against the District and several executive officials pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act, alleging that "Defendants' programs and activities for persons with disabilities systematically deny or ignore Plaintiffs' choices and preferences for integrated community care."  RD 1, at 4.  They sought "a permanent injunction to take such steps as are necessary to serve [the] Named Plaintiffs and class

members in the most integrated settings appropriate to their needs."  RD 1, at 27.

An amended complaint added an additional plaintiff.  RD 17.

The District moved to dismiss or, in the alternative, for summary judgment, arguing that the District had an "effectively working system" that satisfied the District's obligations under *Olmstead*.  RD 19.  After discovery, the district court denied the District's motion (except that it dismissed claims against individual defendants), concluding that sufficient factual issues existed regarding whether the District had shown a "measurable commitment" to de-institutionalization of individuals residing in nursing facilities.  *Day v. District of Columbia*, 894 F. Supp. 2d 1, 28-29, 33 (D.D.C. 2012).  A second amended complaint withdrew the claims of two plaintiffs who had successfully transitioned from nursing facilities as well as those of another plaintiff who did not want to leave the nursing home, but added four new plaintiffs.  RD 46.

On May 15, 2012, plaintiffs filed their first motion for class certification, seeking certification under Rule 23(b)(2).  RD 54.  While the motion was pending, the parties conducted voluminous discovery on the merits.

In an oral ruling on January 7, 2013, the district court denied plaintiffs' motion for class certification without prejudice, finding that (1) plaintiffs impermissibly sought individualized relief and (2) several class members' claims overlapped with relief provided in the settlement of a separate, long-running class

action involving the District's provision of community-based mental health services. JA 608-09, 1220; *see also Dixon v. Gray*, No. 74-CV-0285 (D.D.C.). The district court ordered plaintiffs to file a third amended complaint and permitted them to file a second motion for class certification. JA 1220.

The third amended complaint substituted plaintiffs, altered the definition of the putative class, and expanded upon plaintiffs' requested relief. JA 620-655. The revised class definition sought certification of a class consisting of:

> All persons with physical disabilities who, now or during the pendency of this lawsuit: (1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible to live in the community; and (3) would live in the community instead of a nursing facility if the District of Columbia would provide transition assistance to facilitate their access to long-term care services in the community.

JA 648. The District moved to dismiss the third amended complaint, arguing that the revised definition was impermissibly indefinite and overbroad, and further that plaintiffs lacked standing to pursue the articulated relief. RD 99. After completing discovery on the merits, and while the motion to dismiss was pending, plaintiffs filed their second motion for class certification. RD 103.

**b.    The district court's decision to grant class certification.**

On March 29, 2014, the district court denied the District's motion to dismiss and granted plaintiffs' second motion for class certification. JA 1256-57. It modified the definition advanced by plaintiffs and instead defined the class as:

10

> All persons with physical disabilities who, now or during the pendency of this lawsuit:
>
> (1) receive DC Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days;
>
> (2) are eligible for Medicaid-covered home and community-based long-term care services that would enable them to live in the community; and
>
> (3) would prefer to live in the community instead of a nursing facility but need the District of Columbia to provide transition assistance to facilitate their access to long-term care services in the community.

JA 1256. The district court did not identify a specific policy or practice of the District that injures all members of the class commonly. Instead, it endorsed a finding of commonality focused on the asserted legal violation, concluding that a class action was appropriate to determine whether "the District is violating the integration mandate and injuring each and every class member by virtue of its failure to implement an effective system of transition assistance." JA 1243 (footnote omitted). Thus, it identified three common questions: "(1) are there deficiencies in the District's existing system of transition assistance? (2) if so, what are those deficiencies? and (3) are the proven deficiencies causing unnecessary segregation?" JA 1243-44 (footnote omitted). These questions, the court asserted, satisfied *Wal-Mart*'s requirement of "a common contention[]" "'that is capable of classwide resolution—which means that determination of its truth or falsity will

11

resolve an issue that is central to the validity of each one of the claims in one stroke.'" JA 1240-41 (quoting *Wal-Mart*, 131 S. Ct. at 2251); JA 1244.

The district court's discussion of typicality under Rule 23(a)(3) was also instructive. According to the court, an "effective system of transition assistance"—a concept not defined in statute or District policy—is not a singular obligation, but a constellation of discrete requirements more important or less important "depending on the nature of the claim and the facts of an individual case," such as:

> (1) individual assessments upon admission and periodically … for all residents to determine interest in community-based services; (2) provision of accurate information about available community-based services and eligibility requirements … ; (3) discharge/transition planning that commences upon admission and includes a comprehensive written discharge/transition plan[]; (4) identification of what community-based services are needed and assistance in arranging for [them]; (5) assistance in applying for and enrolling in available waivers or transition programs; and (6) identification of barriers to transition and assistance in overcoming [them].

JA 1246-47. Although admitting that "th[e] question is not free from doubt," the court held that a failure to effectively implement all components of transition assistance, so defined, is "sufficiently concrete to constitute a discriminatory practice that injures class members in the same manner." JA 1246, 1248. It also recognized, however, that "[t]here is no question" that if its broad definition of transition assistance were defined more narrowly, "it is unlikely that the named plaintiffs' claims would be typical" of those of the class. JA 1246 n.61.

12

The district court similarly grouped multiple alleged failures together to find Rule 23(b)(2) satisfied. Where *Wal-Mart* had held that "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them," *Wal-Mart*, 131 S. Ct. at 2557, the court found it "sufficient that plaintiffs have proffered evidence of systemic deficiencies in the District's system of transition assistance and that those deficiencies appear to be affecting the class," JA 1253-54.

## STANDARD OF REVIEW

As this Court explained in *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir. 2002):

> Rule 23(f) review will ordinarily be appropriate in three circumstances: (1) when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable, taking into account the district court's discretion over class certification; (2) when the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; and (3) when the district court's class certification decision is manifestly erroneous.

*Id.* at 105.

On the merits, the Court reviews class certification decisions "carefully" for legal error or abuse of discretion. *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) ("Our

13

review is for abuse of discretion or legal error."). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *see also Kellmer v. Raines*, 674 F.3d 848, 851-52 (D.C. Cir. 2012) (reversing on abuse-of-discretion review).

## SUMMARY OF ARGUMENT

Applying settled law that this Court will exercise discretion under Rule 23(f) to permit appeal of a manifestly erroneous certification order—especially where the order portends a massive waste of judicial and party resources—this Court should grant the District's petition to appeal under Rule 23(f).

On the merits, the Court should vacate the class certification order because the district court's decision violates *Wal-Mart* and this Court's decision in *D.L.*, and because, under a proper understanding of the law, the plaintiffs cannot satisfy Rule 23(a)(2) & (3) and Rule 23(b)(2). In *D.L.*, a case very similar to this one, the Court vacated a class-certification order and announced legal principles that govern when a class of individuals alleging that a government is performing some function inadequately seeks certification. The Court held that a district court may not certify a class consistent with the commonality requirement in Rule 23(a)(2) "[i]n the absence of identification of a policy or practice that affects all members of the class in the manner" required by *Wal-Mart*. *D.L.*, 713 F.3d at 126. Further, a district court may not certify a class under Rule 23(b)(2) in which "'each

14

individual class member would be entitled to a *different* injunction or declaratory judgment,'" but rather only if a "single injunction or declaratory judgment would provide relief to each member." *Id.* at 125 (quoting *Wal-Mart*, 131 S. Ct. at 2557).

The district court did not honor these binding principles and instead impermissibly certified a class "based on multiple, disparate failures to comply" with the District's asserted statutory obligations under the "integration mandate" of the ADA. *D.L.*, 713 F.3d at 128. The district court did not identify any policy or practice common to the claims of every member of the class, or reconcile its decision with this Court's admonition (again honoring *Wal-Mart*) that Rule 23(a)(2) may not be satisfied by showing "'merely that [class members] have all suffered a violation of the same provision of law.'" *Id.* at 125 (quoting *Wal-Mart*, 131 S. Ct. at 2551) (alteration in *D.L.*). For the very same reasons, the district court erred in finding that the named plaintiffs' claims were typical of the class as a whole, as required by Rule 23(a)(3). And though it relied on Rule 23(b)(2), the district court also did not explain how "'a single injunction or declaratory judgment would provide relief to each member'" where it is undisputed that members of the class may suffer injury for entirely different reasons. *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2557).

15

## ARGUMENT

Because of these manifest errors, this Court should exercise interlocutory review under Rule 23(f) and vacate the class certification decision.

## I.    The Court Should Grant Interlocutory Review Under Rule 23(f).

Rule 23(f) gives this Court discretion to "permit an appeal from an order granting or denying class-action certification."  The Court has recognized that review under this rule "will ordinarily be appropriate … when the district court's class certification decision is manifestly erroneous."  *In re Lorazepam*, 289 F.3d at 105.  This Court has exercised its discretion to grant Rule 23(f) review before.  *See In re Rail Freight*, 725 F.3d at 251.  And other courts have exercised their discretion to grant Rule 23(f) review when the class certification decision violates the principles of *Wal-Mart*, as the district court's decision does here.  *See, e.g.*, *Scott v. Family Dollars Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013); *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698 (5th Cir. 2012); *M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012); *In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.*, 708 F.3d 704 (6th Cir. 2013); *Parko v. Shell Oil Co.*, 739 F.3d 1083 (7th Cir. 2014); *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213 (10th Cir. 2013).      This Court should similarly grant the petition here because the district court's class certification order is manifestly erroneous in several different ways.

16

The multiple ways in which the district court's decision was manifestly erroneous will be explained in Part II below because they are the same reasons for which the class certification decision must be vacated.

Rule 23(f) review is additionally warranted to prevent a tremendous waste of judicial and party resources in continuing proceedings based on the erroneously certified class. Absent immediate review, this case will consume significant judicial and party resources as the district court considers liability and, potentially, the scope of any remedy based on an improperly certified class. The District will be forced to continue participating in onerous and unwarranted discovery, summary judgment proceedings, and perhaps trial, despite the doubts the district court expressed in its Rule 23 analysis and despite its recognition that the District has improved its integration efforts and that its progress appears to be continuing. JA 1226, 46. In a similar case in Florida, a class was decertified *after trial* given Florida's legislative developments in the area of transition planning. *See Lee v. Dudek*, N.D. Fla. No. 08-CV-26, Docket Entry 372 (Jan. 3, 2012). *Lee* demonstrates the need for early appellate court intervention in cases such as these. Interlocutory review will "spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed" because the certification order "overlooks directly controlling

precedent." *Prado-Steinman v. Bush*, 221 F.3d 1266, 1274-75 (11th Cir. 2000).

Appellate review now, rather than after final judgment, is warranted.

## II.    On The Merits, The Court Should Vacate The Class Certification Ruling.

### A.    The district court's decision violates this Court's decision in *D.L.* and the Supreme Court's decision in *Wal-Mart*.

In 2011, the Supreme Court issued its landmark decision in *Wal-Mart*. There, the named plaintiffs filed a class action based on the allegation that Wal-Mart discriminated against female employees in violation of Title VII. 131 S. Ct. at 2547. They did not allege any express policy of discrimination, but identified a pattern and practice of allegedly discriminatory decisions by managers. *Id.* at 2548. Named plaintiffs perceived a "corporate culture" that "permit[ted] bias against women to infect" those discretionary decisions and "ma[de] every woman at the company the victim of one common discriminatory practice." *Id*.

The Supreme Court overturned the class certification order. It held that Rule 23(a)(2) requires "a common contention … capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. It also held that Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 2557.

18

Shortly before plaintiffs filed their second motion for class certification, this Court rejected an attempt, much like plaintiffs' attempt, to lump multiple, disparate systemic failures into a single class under Rule 23(b)(2).  *D.L.*, 713 F.3d at 127. *D.L.* was a challenge to the District's "Child Find" system under the Individuals with Disabilities in Education Act ("IDEA") as part of its obligation to ensure that certain children with special needs receive a free appropriate public education ("FAPE").  *Id.* at 121.  Much like here, the *D.L.* plaintiffs alleged that the District's policies "resulted in systemic failures"—there, "failures to identify, locate, evaluate, and offer special education and related services to disabled preschool-age children."  *Id.* at 122.  The district court certified a Rule 23(b)(2) class, finding that "the glue" holding the various reasons why class members were denied a FAPE were systemic failures caused by ineffective policies and practices.  *Id.* at 125.

> This Court vacated the class certification order, explaining:

> After *Wal-Mart* it is clear that defining the class by reference to the District's pattern and practice of failing to provide FAPEs speaks too broadly because it constitutes only an allegation that the class members "have all suffered a violation of the same provision of law," which the Supreme Court has now instructed is insufficient to establish commonality given that the same provision of law "can be violated in many different ways."  *In the absence of identification of a policy or practice that affects all members of the class in the manner* Wal-Mart *requires, the district court's analysis is not faithful to the Court's interpretation of Rule 23(a) commonality.*

*Id.* at 126 (emphasis added) (citation omitted).  The Court repeatedly returned to the need to identify a particular policy or practice linking the members of any class to be certified:

> [T]he harms alleged to have been suffered by the plaintiffs here involve different policies and practices at different stages of the District's Child Find and FAPE process; the district court identified no single or uniform policy or practice that bridges all their claims….
>
> [T]he … claims appear to be based on multiple, disparate failures to comply with the [District's] statutory child find obligations rather than a truly systemic policy or practice which affects them all….
>
> *Wal-Mart* instructs that holding that the District has violated the IDEA as to each class member is not enough to establish Rule 23(a) commonality in the absence of a uniform policy or practice that affects all class members….
>
> [A]lthough Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class," the Rule does not bar courts from granting further equitable relief that does not reach every plaintiff in the case.  But given *Wal-Mart*'s interpretation of Rule 23(a) commonality, the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member.

*Id.* at 127-28 (citations omitted).  Applying those principles here, the class certification decision cannot stand.

       1.     Rule 23(a)(2).

The district court could certify a class here, if at all, only on "identification of a policy or practice that affects all members of the class in the manner *Wal-Mart* requires."  *D.L.*, 713 F.3d at 126.  But in seeking class certification, the named

plaintiffs failed to identify any particular policy or practice that affected all members of the putative class, and the district court similarly failed to identify such a policy or practice before certifying a class. They thus did not adhere to this Court's *D.L.* decision or *Wal-Mart*.

Instead, the district court found Rule 23(a)(2) satisfied based on plaintiffs' "contention that the District is violating the integration mandate and injuring each and every class member by its failure to implement an effective system of transition assistance." JA 1243; *see also* RD 93, at 23 ("[T]his case hinges on [the District's] failure to create and implement effective transition policies and practices to connect individuals who are eligible and desirous of community-based long-term care services."). But this asserted failure—if there even is one—is far from a "uniform policy or practice that affects all class members." *D.L.*, 713 F.3d at 128. Indeed, it amounts to nothing more than the unremarkable assertion that *sometimes*—which is to say, not "uniformly"—one of three District agencies fails to perform one of the several discrete functions embodied in the district court's definition of "transition assistance." There is no assertion that the District *always* fails to meet these requirements or has an affirmative policy of failing to do so. *Cf. Wal-Mart*, 131 S. Ct. at 2552-54, 2557 & n.10 (finding no "significant proof" that the defendant "operated under a general policy of discrimination" that "touch[ed] and concern[ed] all members of the class"); *D.L.*, 713 F.3d at 127 (vacating

21

certification decision where "the district court identified no single or uniform policy or practice that bridges all their claims"). Nor could there be, as MFP, ADRC, and DBH undisputedly have successfully moved a number of putative class members into the community. JA 941, JA 1107, 1129-30.[1] But an allegation that the District has failed some of its Medicaid recipients that reside in nursing facilities—for various reasons and through various programs—does not "generate common answers apt to drive resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks and emphasis omitted). Indeed, "dissimilarities within the proposed class … have the potential to impede the generation of common answers." *Id.* (internal quotation marks omitted). Those dissimilarities are fatal in this case.

In reaching its flawed commonality finding, the district court relied on two district court cases certifying *Olmstead* classes after *Wal-Mart*. JA 1244 (citing *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254 (D.N.H. 2013), and *Lane v. Kitzhaber*, 283 F.R.D. 587 (D. Ore. 2012)). But neither case

---

[1]    Nor could the class properly be read to mean only those whom the District has failed by excluding those who have successfully transitioned into the community. A Rule 23 class cannot be defined to include only those entitled to relief. "Th[at] is an improper fail-safe class that shields the putative class members from receiving an adverse judgment." *Randleman v. Fid. Nat'l Trust Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). That is because "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Id.* If the class the district court certified is an improper fail-safe class, that is an independent reason to vacate the class certification decision. *Id.*

supports certification here. In *Kenneth R.*, the district court certified a class of New Hampshire residents with serious mental illness who had been unnecessarily institutionalized and were alleging a systemic deficiency in the availability of community-based mental health services. 293 F.R.D. at 268, 271. In the district court's view, the plaintiffs had satisfied the commonality requirement because "the State practices [they] challenge … all pertain to a discrete set of community-based services—services the State itself has persuasively identified as critical to solving the crisis in New Hampshire's mental health system." *Id.* at 268. The plaintiffs cited a particular harm—underfunding New Hampshire's community-based mental-health services while overfunding its institutional care—that led to a discrete injury—unnecessary institutionalization in two particular mental health facilities. Here, in contrast, plaintiffs do not challenge the availability of home- and community-based services, but allege various failures of multiple District agencies to assist them in transitioning into the community and accessing such services. *Kenneth R.* thus provides no support for class treatment in this case.[2]

---

[2] What is more, the defendants in *Kenneth R.* filed a petition for interlocutory appeal under Rule 23(f), but the case settled and thus the First Circuit had no opportunity to scrutinize the district court's certification decision. *See New Hampshire v. Amanda D.*, No. 13-CV-8038 Mot. to Dismiss Appeal (Feb. 26, 2014) & Judgment (Mar. 14, 2014).

*Lane* similarly cannot support the class certification decision here. In that case, the district court certified a class of intellectually and developmentally disabled individuals who were unnecessarily segregated in sheltered employment settings. 283 F.R.D. at 594. But the employment services at issue were funded and administered by a single state agency—the Oregon Department of Human Services. *See id.* at 591-92. In contrast, plaintiffs here challenge the practices of several different District agencies.

But even if *Kenneth R.* and *Lane* were on point (and they are not), those district court class certification decisions from other jurisdictions cannot trump the clear mandates of *Wal-Mart* and *D.L.* Without an identifiable policy or practice, there is no reason to think, for instance, that all failures to provide "effective transition assistance" to eligible and interested nursing facility residents share anything meaningful in common besides the bottom-line conclusion that the residents remain in nursing facilities. The district court's decision identifies many different reasons why eligible and interested nursing facility residents might not be transitioned. One individual might remain in a nursing facility despite her ability and interest due to a lack of information regarding available to HCBS, another because one of the three District agencies did not adequately assist her in locating needed medical providers in the community, and another because there may not be sufficient capacity in the EPD Waiver or MFP programs to accommodate her. *See,*

24

*e.g.*, JA 1243 n.58 (listing among merits questions "does the District in fact fail to offer sufficient discharge planning or fail to inform and provide nursing facility residents with meaningful choices of community-based long-term care alternatives to nursing facilities" (internal quotation marks and brackets omitted)).  Thus, as in *D.L.*, the district court impermissibly certified a class "based on multiple, disparate failures to comply" with statutory obligations "rather than a truly systemic policy" affecting all class members at once.  713 F.3d at 128; *see also Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (denying class certification because allegation that "class members have 'suffered' as a result of disparate individual IDEA child-find violations is not enough; it does not establish that the individual claims have any question of law or fact in common").

Rather than identify a specific policy or practice as this Court has required, the named plaintiffs and the district court attempted to rely on the District's asserted *failure* to adopt policies or practices that would ensure that there would be no violations of the ADA's integration mandate with respect to class members.  JA 1243.  But this Court properly rejected that argument in *D.L.*, quoting *Wal-Mart*: "'Without some glue holding the alleged *reasons* for all [the challenged actions] together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.'"  713 F.3d at 127 (quoting *Wal-Mart*, 131 S. Ct. 2552).  The idea that

commonality may be shown merely based on the failure to adopt better policies or practices to prevent violations of a particular legal obligation amounts to no more than the rejected idea that class proponents need show "'merely that [class members] have all suffered a violation of the same provision of law.'" *Id.* at 125 (quoting *Wal-Mart*, 131 S. Ct at 2551) (alteration in *D.L.*).  It would trivialize *Wal-Mart* to suggest that the Court ruled against the plaintiffs there merely because they failed to say that Wal-Mart failed to adopt policies and practices sufficient to ensure plaintiffs would suffer no discrimination.  Instead, the reason why the Court deemed the contention that class members "have all suffered a violation of the same provision of law" insufficient is because it "gives no cause to believe that all their claims can productively be litigated at once."  *Wal-Mart*, 131 S. Ct. at 2551; *see also Love v. Johanns*, 439 F.3d 723, 729-30 (D.C. Cir. 2006) ("'[A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality" (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998))).

The district court not only violated this Court's decision in *D.L.*, but also took the wrong lesson from the remand proceedings in that case.  As the district court related, the *D.L.* court on remand certified four subclasses.  JA 1186, 1243.  A motions panel of this Court rejected a Rule 23(f) petition about the subclasses because the District had not shown that the certification decision was manifestly

erroneous or that interlocutory review was necessary.  JA 1243.  That decision by a motions panel is non-binding, *see Connors v. Incoal, Inc.*, 995 F.2d 245, 256 n.3 (D.C. Cir. 1993) (Silberman, J., concurring), and the District continues to believe the certification of subclasses in *D.L.* was manifestly erroneous.  More to the point, the district court here did not even certify subclasses and thus did not even take that step toward reconciling its decision with binding law.

At a minimum, the district court failed to conduct the "rigorous analysis" required by *Wal-Mart* and *D.L.*  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*, 131 S. Ct. at 2551.  For example, the District challenged commonality on the basis that plaintiffs alleged that they were subject to unnecessary or prolonged placement in nursing facilities due to a lack of transition assistance from the District, when in fact the record demonstrates that the most prevalent obstacle preventing putative class members from returning to the community is a lack of available, accessible, and affordable housing—"and it is agreed that the Court cannot order the District to provide housing."  JA 1225-26; *see also* JA 877 ("297 of 355 DC nursing home residents screened as of [January 30, 2013] reported needed subsidized housing in the community to transition"); JA 500-01 (explaining how public housing is controlled by an independent entity, the District of Columbia Housing Authority); JA 943 (plaintiff stating that locating housing is the only thing needed to move out

27

of the nursing facility; "[e]verything else has been taken care of"); JA 945-46 (plaintiff stating that lack of housing is the only thing preventing him from moving out of the nursing facility); JA 949 (plaintiff stating that he would like the court to "help me get a house"); JA 951 (plaintiff stating that "I would like to live in my own apartment, house, or other private residence but I do not have a place to go right now"), JA 954 (plaintiff stating that "I do not have anywhere to live unless I get housing through my applications or MFP or ADRC"); JA 957 (plaintiff stating that "if they had affordable housing for me to get back into the community, then it wouldn't be no problem"); JA 961 (plaintiff answering "yes" when asked "[d]o you think that your lack of an identified place for you to move to is the primary reason why you're still in a nursing home?").

While the district court recognized that the availability of housing posed a substantial question of whether plaintiffs could succeed on the merits, JA 1226 (questioning whether plaintiffs could show "a causal link between any proven deficiencies in the District's system of transition assistance and the injury associated with being 'stuck' in a nursing facility"), and also whether their request for injunctive relief would exceed the scope of their claims, the court dismissed the District's commonality argument, stating that "the effect of a lack of housing is a question that cannot be decided at this stage," JA 1245-46 n.60. But in order to conduct a "rigorous analysis," the district court was required to delve into the

28

housing inquiry—not to make a final merits determination, but to assess whether there exists a common core of putative class members for which there is a sound basis to infer that an augmented system of transition assistance would, in fact, affect their "unnecessary segregation" in nursing facilities. *See D.L.*, 713 F.3d at 128 ("[G]iven *Wal-Mart*'s interpretation of Rule 23(a) commonality, the requested relief must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member."). The district court's summary rejection of these weighty commonality concerns on the basis that they were merits questions that could be deferred falls well short of the "rigor[]" required by *Wal-Mart*. 131 S. Ct. at 2551; *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 843 (5th Cir. 2012) (vacating class certification decision where district court ran afoul of *Wal-Mart* "by declining to analyze Texas's argument that dissimilarities within the proposed class precluded commonality with specific reference to the elements or defenses for establishing the class claims").

      2.    Rule 23(a)(3).

For the same reasons the class fails the commonality requirement, it cannot survive a typicality analysis. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. Here, however, the asserted lack of transition assistance would affect different class members differently, such that the named plaintiffs'

claims could not be typical of the putative class as a whole. The district court acknowledged the shaky foundation on which it was resting its typicality decision, stating that the "question is not free from doubt" whether the claims of the named plaintiffs could be typical given the myriad ways in which the alleged lack of transition assistance might affect the various class members. JA 1246. Indeed, the court went even further, stating that if the plaintiffs defined their claims with any specificity—beyond the amorphous term "effective transition assistance"—typicality would be lacking. JA 1246 n.61 ("There is no question that if the 'specific discriminatory practice' of 'lack of transition assistance' were defined more narrowly, it is unlikely that named plaintiffs' claims would be typical."). But plaintiffs cannot end-run the typicality analysis by obfuscating the nature of their claims. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 437 (4th Cir. 2006) (rejecting typicality argument "made at an unacceptably general level" and affirming denial of class certification because "[e]xamining typicality at a more directly relevant level, the district court found meaningful differences between plaintiffs' claims and those of" other putative class members). Thus, even if plaintiffs can satisfy commonality in light of *Wal-Mart* and *D.L.* (and they cannot), the certification decision must be vacated because the named plaintiffs' claims are not typical of the class they purport to represent.

3.      Rule 23(b)(2).

Finally, the district court committed a related but independent error under Rule 23(b)(2). A class action may proceed under this rule if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The final clause is important: The injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'" *Jamie S.*, 668 F.3d at 499 (quoting *Kartman v. State Farm Mut. Auto. Ins.*, 634 F.3d 883, 892-94 (7th Cir. 2011)). "'[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *D.L.*, 713 F.3d at 125 (quoting *Wal-Mart*, 131 S. Ct. at 2557).

The District explained to the district court that the plaintiffs could not satisfy Rule 23(b)(2) because they sought a complex, multi-part injunction. The district court's response—that the "alleged failure to implement an effective system of transition assistance is obviously an action or inaction that can be enjoined or declared unlawful only as to all of the class members or as to none of them," JA 1253 (internal quotation marks and citation omitted)—is plainly inadequate. There is no dispute that there are different *reasons* why different members of the class

may not receive "effective" transition assistance. That is why this Court, in order to avoid collapsing the Rule 23(b)(2) analysis into the rote inquiry of whether all class members suffered the same legal violation, required the identification of a particular policy or practice to link all the members of any certifiable class. An injunction could require the District to suspend a particular policy relating to its provision of HCBS, for example, and so a Rule 23(b)(2) class might be certified based on that policy. But there is no "indivisible" injunction that the members of any class here can claim is "warranted." *D.L.*, 713 F.3d at 125. Indeed, the plaintiffs requested an injunction providing individualized relief to widely disparate class members. JA 653-54. Plaintiffs sought a complex, multifaceted permanent injunction to require the District to:

> i) Develop and implement a working system of transition assistance for Plaintiffs whereby Defendant, at a minimum, (a) informs DC Medicaid-funded nursing facility residents, upon admission and at least every three months thereafter, about community-based long-term care alternatives to nursing facilities; (b) elicits DC Medicaid-funded nursing facility residents' preferences for community or nursing facility placement upon admission and at least every three months thereafter; (c) begins DC Medicaid-funded nursing facility residents' discharge planning upon admission and reviews at least every month the progress made on that plan; and (d) provides DC Medicaid-funded nursing facility residents who do not oppose living in the community with assistance accessing all appropriate resources available in the community.

> ii) Ensure sufficient capacity of community-based long-term care services for Plaintiffs under the EPD, MFP, and PCA programs, and other long-term care service programs, to serve Plaintiffs in the most

integrated setting appropriate to their needs, as measured by enrollment in these long-term care programs;

iii) Successfully transition Plaintiffs from nursing facilities to the community with the appropriate long-term care community-based services under the EPD, MFP, and PCA programs, and any other long-term care programs, with the following minimum numbers of transitions in each of the next four years:

> 80 class members in Year 1;
>
> 120 class members in Year 2;
>
> 200 class members in Year 3; and
>
> 200 class members in Year 4.

iv) Sustain the transition process and community-based long-term care service infrastructure to demonstrate the District's ongoing commitment to deinstitutionalization by, at a minimum, publicly reporting on at least a semi-annual basis the total number of DC Medicaid-funded nursing facility residents who do not oppose living in the community; the number of those individuals assisted by Defendant to transition to the community with long-term care services through each of the MFP, EPD, and PCA, and other long-term care programs; and the aggregate dollars Defendant saves (or fails to save) by serving individuals in the community rather than in nursing facilities.

JA 654. And while "plaintiffs repeatedly assured the [district c]ourt that they are not seeing individualized relief," JA 1254, that assertion is plainly belied by the relief requested in plaintiffs' third amended complaint. Even a cursory reading of the language above makes it unmistakably clear that plaintiffs are seeking relief under which "'each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.'" *D.L.*, 713 F.3d at 125

33

(quoting *Wal-Mart*, 131 S. Ct. at 2557) (emphasis in original).  That plaintiffs have strung the various injunctive components into one long list delineated by romanettes and semi-colons does not hide the fact that the relief they are seeking is inherently individual to each putative class member, who would need different transition assistance from one of at least three different programs administered by three different entities.  *See Jamie S.*, 668 F.3d at 498-500 ("It is no answer to say that the … order affects the entire class; [it] merely establishes a system for eventually providing individualized relief.  It does not, on its own, provide 'final' relief to any class member.").

The district court's manifest error under Rule 23(b)(2) is an unfortunate outgrowth of its failure to identify any particular policy or practice undergirding the class under Rule 23(a)(2) & (3).  Because the plaintiffs' allegations are neither common to nor typical of the class, no singular injunction or declaration can remedy their distinct and varied alleged injuries.  Accordingly, the certification decision cannot stand.

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for interlocutory review under Rule 23(f) and vacate the district court's class certification decision.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
Deputy Solicitor General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
October 2014                    (202) 727-6287

## CERTIFICATE OF SERVICE

I certify that on October 10, 2014, electronic copies of this brief were served on all parties registered through the Court's CM/ECF system.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN

## CERTIFICATE OF COMPLIANCE

I further certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 8207 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN